# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|                        |   | No. 3:19cv1363   |
|------------------------|---|------------------|
| VINCENT TOLENTINO,     | : |                  |
|    Plaintiff | : |              |
| v.                     | : | (Judge Munley)   |
|                        | : |                  |
| DR. XUE, et al.,       | : |                  |
|    Defendants | : |             |

## MEMORANDUM OPINION

### I.  BACKGROUND

Vincent Tolentino, a Pennsylvania state prisoner, filed this 42 U.S.C. § 1983 complaint alleging that Defendants violated his Eighth Amendment rights with regard to the medical treatment prescribed for Tolentino's post-traumatic stress disorder (PTSD) and other ailments.  (Doc. 1).  Tolentino's claim stretches across several years and generally relates to prison officials either refusing to treat Tolentino, changing his medications, or refusing to believe his professed symptoms.  (*Id.*).  Tolentino has also filed a motion to proceed *in forma pauperis* and, for screening purposes, that motion will be granted.  (Doc. 11)

Tolentino was diagnosed with PTSD in 2013 and prescribed Klonopin and Sinequan to treat his symptoms.  (Doc. 1 at 19).  Tolentino's PTSD manifested with symptoms of extreme fear and anxiety, sleep deprivation,

1

racing thoughts, and difficulty concentrating. (*Id.* at 19-20). Several times in 2013 or 2014 unnamed nurses dispensed the wrong medication, causing Tolentino to collapse and injure himself. (*Id.* at 19). Nevertheless, the prescribed medications improved Tolentino's condition until Klonopin was abruptly discontinued by Nurse Vilhaldel in 2014, which caused a consistent "downward spiral" in Tolentino's mental health. (*Id.*).

Around February 2018, Tolentino began to meet with Dr. Xue. (*Id.* at 12). When Tolentino began to cry during a meeting, Xue offered to place Tolentino in a psychiatric observation cell, and later informed a nurse that Tolentino was "playing a game to get Klonopin." (*Id.*). In March 2019, Xue refused to alter Tolentino's medication regimen and, in April 2019, Xue began asking Tolentino about his criminal and educational background, purportedly for the purpose of falsifying Tolentino's medical records. (*Id.* at 13-14).

In May 2019, Nurse Cousins adjusted Tolentino's medications and prescribed psychotropic drugs, despite Tolentino informing her that such medications had been tried in the past and had proven ineffective. (*Id.* at 20). Cousins also allegedly informed Tolentino that she believed he was addicted to Klonopin. (*Id.* at 21). In June 2019, Tolentino began suffering from an anxiety attack that required medication. (*Id.* at 21-22). Cousins

2

recognized the need to treat Tolentino, but falsely stated that she did not have any fast-acting medications and instead prescribed different medications. (*Id.* at 22). In July 2019 Cousins again adjusted Tolentino's medications and provided a new medication that would take four to six weeks to take effect. (*Id.* at 24).

In June 2019, Ms. Baldauf examined Tolentino and correctly identified the issue that was bothering him, but "refused to order adequate medicine to treat the underlying symptom of severe anxiety." (*Id.* at 22). After refusing to meet with Tolentino for more than one week, Baldauf again refused to treat Tolentino and began forwarding sick call slips to Cousins. (*Id.* at 23).

In June 2019, Nurse Amanda Flasher attempted to provide Tolentino with powdered medication, but Tolentino requested pills instead. (*Id.*). Flasher stated that she needed to speak with her supervisor, and later informed Tolentino that the supervisor instructed her not to give any medication to Tolentino, thereby depriving Tolentino of his diabetes, heart burn, cholesterol, and psychiatric medications. (*Id.*). It was not until several hours later—after Tolentino suffered from an anxiety attack—that other prison officials provided Tolentino with his medications. (*Id.* at 23-24).

II. **DISCUSSION**

This Court has a statutory obligation to conduct a preliminary review of

3

pro se complaints brought by plaintiffs who proceed *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B). This obligation requires that the Court dismiss a complaint if it fails to state a claim upon which relief may be granted. *Id.* § 915(e)(2)(B)(ii). To determine whether a complaint states a plausible claim for relief, this Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Alpizar-Fallas v. Favero*, 908 F.3d 910, 914 (3d Cir. 2018).

A. Procedural Bar

As an initial matter, the Court notes that it is clear from the face of the complaint that some incidents underlying Tolentino's claim are barred from consideration by the applicable statute of limitations.[1] "The statute of limitations applicable to § 1983 claims in Pennsylvania is two years." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). "A § 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which his action is based." *Id.* at 157-58 (brackets and internal quotation marks omitted). Tolentino filed this complaint, at the earliest, on

---

[1] "Although the statute of limitations is an affirmative defense, if it is obvious from the face of the complaint that a claim is barred by the applicable statute of limitations, a court may dismiss the claim sua sponte." *DePack v. Gilroy*, 764 F. App'x 249, 251 (3d Cir. 2019) (citation omitted).

4

July 17, 2019,[2] and the statute of limitations would therefore bar consideration of any events that occurred prior to July 17, 2017. Any allegations related to improper treatment in 2013 or 2014 (Doc. 1 at 19-20), are therefore barred by the statute of limitations and will be dismissed.

B. <u>Personal Involvement</u>

The court further concludes that several Defendants must be dismissed because Tolentino has failed to allege any personal involvement in the events described in the complaint. First, Mr. Suto and Correct Care are named as defendants in the caption of the case, but the "complaint does not mention these defendants at all," and they must therefore be dismissed from this action. *Green v. New Jersey*, 625 F. App'x 73, 76 (3d Cir. 2015). Second, the only allegation against Mr. Diehl is that he "told [Tolentino] that staff believe[d] [he was] med seeking." (Doc. 1 at 21). The Court can discern no constitutional violation or tort claim that could arise from such a statement, and Diehl must therefore be dismissed from the case.

Third, although the complaint mentions Price, Lynch, Brumbaugh, Walters, and Kauffman (collectively "Supervisory Defendants"), Tolentino appears to attempt to hold Supervisory Defendants liable solely on the basis

---

[2] *See* Doc. 1 at 31; *Houston v. Lack*, 487 U.S. 266, 270-72 (1988) (discussing prisoner mailbox rule).

of *respondeat superior*. (*See id.* at 21). However, it is well settled that "[a] plaintiff cannot predicate liability on her § 1983 claims on a *respondeat superior* basis." *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (internal quotation marks omitted). Thus, in a civil rights action there are only

> two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations

*Id.* (internal quotation marks omitted).

The complaint is devoid of any allegations that Supervisory Defendants participated in the violation of Tolentino's rights or acquiesced in the violation of his rights. Tolentino does allege that his rights were violated because Supervisory Defendants had "a policy of grossly incompetent staffing" and "inadequate medical staffing," but such statements are conclusory and unsupported by any factual averments. In the absence of any factual support, the Court cannot accept these bald assertions. *See In re Asbestos Prod. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016) ("district courts are not required to accept merely conclusory factual allegations or legal assertions"). The Court thus concludes that Tolentino has failed to a state a claim against Supervisory Defendants in their supervisory capacities.

C. Sufficiency of the Allegations

Turning to the adequacy of Tolentino's Eighth Amendment allegations, to state a claim for inadequate medical treatment, a prisoner "must make (1) a subjective showing that the defendants were deliberately indifferent to his or her medical needs and (2) an objective showing that those needs were serious." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (brackets and internal quotation marks omitted). "Because mere disagreement as to the proper medical treatment does not support a claim of an eighth amendment violation, when medical care is provided, [courts] presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." *Id.* at 535 (citation and internal quotation marks omitted). "'[D]eliberate indifference entails something more than mere negligence' and is a subjective standard that requires the official to both 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and to 'also draw the inference.'" *Id.* at 538 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835-37 (1994)).

The allegations are insufficient to state a claim against Xue. Although Tolentino contends that Xue would only meet with him for five to ten minutes at a time (Doc. 1 at 12-13), there is no allegation that such duration is insufficient to properly treat Tolentino. Furthermore, Tolentino alleges that

7

he asked Xue for a single cell and began crying, after which Xue asked whether Tolentino wished to be moved to psychiatric observation. (*Id.* at 12). There is no allegation that Xue did this maliciously or with deliberate indifference; indeed, given the circumstances, it appears that Xue was simply doing his job and ensuring that Tolentino was properly treated.

Tolentino also complains that Xue refused to prescribe Klonopin. (*Id.*). However, there is no allegation that Xue improperly refused treatment, and Tolentino's allegations demonstrate—at most—a mere "disagreement about proper medical treatment," which is insufficient to state a claim.[3] *Pearson*, 850 F.3d at 535. Additionally, Tolentino's allegation that Xue asked questions for the sole purpose of falsifying Tolentino's medical records (Doc. 1 at 13), is entirely speculative and unsupported by any well-pled allegations, and therefore cannot sustain a claim against Xue.

Finally, Tolentino alleges that Conway "walked away from [Tolentino's] cell when [he] was in a poor mental emotional state" (*id.* at 20), and that Walters told Tolentino to "stop acting" when Tolentino asked for help (*id.* at 21). These allegations are insufficient to demonstrate that Conway or Walters were aware of a substantial risk of serious harm to Tolentino but

---

[3] For that reason, any claim against Cousins regarding medication changes similarly fail to state a claim. (Doc. 1 at 20, 24).

were deliberately indifferent to that risk. Moreover, there is no allegation that either individual was involved in treating Tolentino, or that their statements or actions did anything to prevent or discourage treatment. Any claim against Conway and Walters must therefore be dismissed.

The complaint does, however, adequately state a claim against Cousins, Baldauf, and Flasher. Tolentino alleges that those three individuals deliberately refused to provide necessary medication or medical treatment despite recognizing the need for such treatment. (*Id.* at 22-23). Such actions would violate Tolentino's Eighth Amendment rights. *See Parkell*, 833 F.3d at 337 (Deliberate indifference is shown where defendant "knows of a prisoner's need for medical treatment but intentionally refuses to provide it" (internal quotation marks omitted)).

In sum, Tolentino's claims will be dismissed against all Defendants with the exceptions of Cousins, Baldauf, and Flasher. Nevertheless, because it is not clear that amendment of Tolentino's claims would be futile, he will be afforded an opportunity to amend his complaint. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

III.  Conclusion

For the foregoing reasons, this Court will grant Tolentino's motion to proceed *in forma pauperis* but dismiss without prejudice claims against all Defendants except Cousins, Baldauf, and Flasher.

An appropriate Order follows.

BY THE COURT:

Date: 9/10/19

**s/James M. Munley**

**JUDGE JAMES M. MUNLEY**
**United States District Court**